Case number 24-3909, Tina Zai et al. v. Natl Credit Union Administration Board Oral argument not to exceed 15 minutes per side. Lawrence Acton for the appellant, you may proceed. Are they here? Yeah. Thank you, Your Honors. Lawrence Acton for the appellant, Tina Zai, individually and as trustee of her Children's Trust in Stratford. The Supreme Court has consistently held that jurisdiction is tested by the facts as they existed when the action was brought. There are five facts which existed at the time of filing this action which established jurisdiction. The claims filing deadline was expired for 13 years. After that deadline, the NCUA sued Tina Zai and others in Northern District. They entered into a settlement agreement to resolve that case. The settlement agreement provided that the Northern District shall retain jurisdiction to enforce it, and the District Court also issued an order dismissing that case but retaining jurisdiction to enforce the settlement. If you refer to 12 United States Code section 1789A, it says that the NCUA board may make contracts, sue and be sued, complain and defend in any court of law or equity. It seems to me the question is that gives the District Court jurisdiction regardless of the settlement over the board. The question then is, do one of the jurisdiction stripping provisions apply? And I guess my question is, had the board given you 90 days to exhaust in a letter, would you have had to exhaust at that point? I think you need to start with the letter, the words in the letter. We can talk about the letter in a second. Answer my first question, then by all means move to the letter itself. It's not what's in the letter. I'm saying, had they given you 90 days to exhaust, would you under the statute have been required to exhaust? Well, I think the issue is that the letter itself created no due process. It gave an erroneous instruction. So if we had submitted... Okay, so assume they gave you the ideal letter that said, we recognize you're asserting a claim, we hereby extend the deadline and we give you 90 days to exhaust. Could you have ignored the letter or would you have had to exhaust? We could have ignored the letter because the claims process did not afford us any remedy. The contract was entered years after the claims process closed. The statute does not permit that sort of claim to be considered administratively and it wouldn't make sense. So you're saying they can't reopen the window? Correct, Your Honor. They just can't do it. They can file whatever letter they want, whatever it is, they just can't reopen the window. Well, that's what they argued in the trial court. They've changed their position somewhat in the Court of Appeals. But if you read their letter, it seems to me that it says, we would have to show that in 2010, we had knowledge that there would be a settlement agreement entered years later, that the NCUA would breach that settlement agreement and that the NCUA would deny the existence of the language of the settlement agreement, which said that jurisdiction would be retained in the trial court. So those are the circumstances, Your Honor. Haven't other circuits required some form of exhaustion? I'm sorry? Haven't other circuits required some form of exhaustion, submitting these, you know, these trying to go to the board, even if the letter doesn't quite state things right or you think? Well, the NAPA leaves, they cite two cases, they're district court cases in Louisiana. They weren't briefed. They weren't developed. What about the First Circuit? Isn't it Hino or something like that? I think they cite the Perna case. But in that case, it's a contract that existed at the time of the liquidation. That's not what happened here. The appellants damages flow from a contract that was entered into long after the liquidation. So the cases are distinguishable. If you refer, Your Honor, to the letter, it says that the claims must be filed by a claims waiver date of August 8th, 2010. This letter does not extend the claims waiver date. For the liquidating agent to consider a claim filed after the claims waiver date, you must prove to the liquidating agent's satisfaction that you did not have knowledge of the appointment of the liquidating agent in time to file a claim before the claims waiver date. That would have been a possibility. We couldn't, that could never have been complied with. If you refer to subsection B-5C, it seems that it would indicate that there could be a late file claim, but it doesn't say knowledge, it says notice. And this is important because under paragraph 3B, notice is required to be made by publication and directed to the credit union's creditors to present their claims. This is not a claim that Congress intended to be covered under the statute. Therefore, we don't think that applies. The NCUA has taken this position because under paragraph 3D, it would have total discretion to deny any claim not proved to its satisfaction, and under 3E, its determination to disallow a claim would not be able to be reviewed by any court. That's in the statute, so for a late file claim, we would not have a judicial remedy. If the NCUA determined to their satisfaction that we had knowledge of the 2010 claims waiver date, but did not file a proof of claim, then they could deny the claim and we wouldn't have a judicial remedy. That's why we can't comply with their discover creditor letter. Courts have found that if a party was never given reasonable opportunity to submit an action seeking a right to payment to the administrative claims procedure, then the jurisdictional bar contained in the statute would result in an unconstitutional deprivation of due process as applied to that party. That's what's happened here. It would be a complete bar of jurisdiction in both administrative proceedings and in the court to submit to the claims process. Also we've cited the case Axon versus the FTC, which established that a loss of a right not to undergo an agency proceeding when a party cannot assert its constitutional rights until after the proceedings are over is recognized. The court determined that Congress did not intend particular claims to be brought, to be reviewed administratively, and in applied to Thunder Basin factors. We think the applying... Had they made the deadline 2025, because it's a minimum of 90 days, I recognize they made it 90. Had they made it 2025, then you can see you would have had to exhaust, right? If they made the deadline 2025, no, because it would depend on whether or not there was a judicial remedy available. And if you read the statute, the statute seems to suggest that there is no remedy if it's considered late. Based on their notice... No, but it wouldn't be late, right? If the deadline was 2025, how would it be late? Well, again, Your Honor, then I would go to the fact that we can't expect a federal agency to judge its own conduct as unlawful. How... That's a different argument, right? You concede it would be timely if it was 2025 as the deadline and the statute by its own terms would require you to exhaust. The timeliness is up to them to decide, but... Fair, but that's what I'm saying. And they say it's 2025, January 1, 2025, 2026, whatever, because it says no less than 90 days. If they stipulate that it would be timely and that they weren't going to decide that they couldn't review it on its merits, is that what you're asking, Your Honor? I would say in that case, then it would be futile to submit it at all because they would never... You're saying under no scenario when you're complaining about the liquidating agent, do you have to exhaust? Is that what you're... Under these circumstances, yes, because the contract was entered long after the claims process was closed. They breached the contract, but I get it. I'm saying the claims process is open. They leave the claims process open. And you're saying still don't have to exhaust. I think, Your Honor, that would be correct, yes. There would be no... Do you need that argument to win? Well, I don't see how we could exhaust the claims process that Congress never intended to be applicable to our claim, and that's our argument. This is not a claim under the statute that Congress ever intended to be considered. Isn't it easier for you to just win under the plain language of the law than get some broad exception? Well, you have to follow the law, Your Honor. You have to follow the statute. That's what we've done. When they issued a letter to us, it was certain to us what they were going to do. They were going to deny the claim, and then when we appealed, they would argue that it was untimely and the court had no discretion and no jurisdiction. So we can't comply. Congress never intended for this scenario where an executive agency would enter into a contract after the claims period only to breach it. I guess in Judge Sipar's example, the liquidation is not over. If the claims period is still over, it's not fine. Our position is the excess money that they kept, that was never an asset of the credit union to begin with. It was clear under the settlement agreement the credit union was only entitled to $22 million. So anything that they collected in excess of that, it wasn't an asset of the credit union. I know. I just thought, I know bankruptcy a little bit better, and I don't know bankruptcy that well than under this scheme. But it's about finality, right? You have claims, you have assets, and you need to get those shepherded in a timely fashion to have them paid out. And then the plan's done and confirmed, and it's over. And I think there's some parallels to how this works here. So my point is, in Judge Sipar's example, it felt like that entire process wasn't over. And so maybe there are claims that could still be submitted through the sort of regular channeling of a liquidation. Well, here the point seems to be that this has been over for over a decade. The thing was done. And now there's a claim that arises post-resolution that in some ways relate back, but in some ways is related to new conduct. And your claim is this has to be treated separately. This couldn't somehow relate back to the original plan that has to go through that process. Because that process is over, the assets have been distributed. That's right, Your Honor. Okay. Any further questions? Thank you, counsel. You'll have your time for a rebuttal. Good morning, Your Honor. Sam Lariscia on behalf of the National Credit Union Administration Board as liquidating agent for St. Paul-Croatian Federal Credit Union. I'm going to refer to them as the liquidating agents. We request that this court affirm the district court's decision finding that it lacked jurisdiction over the claims asserted by the appellants, who I'll refer to as Zai. This case is about the liquidating agent advising Zai that the claim in their complaint must be filed with the liquidating agent pursuant to the administrative claim process. But, I mean, you're talking about your letter, Record 19-2? Correct, Your Honor. But your letter says that the deadline was August 8th, and the letter does not extend the claim's waiver date. Well, let's put in context certain of the defendants in this particular case, or the plaintiffs in this case. Two, one did not even exist. The Children's Trust, I have no idea when that even came into existence. I doubt they would even have notice of such a claim. And I would submit to this court that 13D, when we're talking about an act of the liquidating agent, envisions that there are going to be post-deadline claims because there's conduct of the liquidating agent that is occurring after that deadline. Just as in this case, we were alleged to have breached an agreement, and there's been no court that has found, to our knowledge, that the claims process is waived. You agree that 1789 gives jurisdiction to sue the board, right? You say it in your brief in the jurisdictional statement. And then the only question here is, is there a provision that strips the court of jurisdiction? We agree.  Right? And here, it seems to me, it's pretty simple in that this claim never existed during the process. But this claim arises from an act, an alleged act of the liquidating agent. That occurs after the claims process is run. Correct. It is after the claims process is run, but the existence of the claim didn't exist until after. And I do want to make clear, the liquidating agent, the liquidation estate is still open. In fact, Eddy's Eye still owes restitution and $1.4 million as of 2020 to the liquidating agent. And the entire genesis of this process, the claims process, is this particular liquidation resulted in $170 million of loss. But how could they file a claim? It says the letter does not extend the claim's waiver date. Sure. And clearly here, Tina's Eye does not fall within someone who didn't have notice of the liquidating agent. The liquidating, Tina's Eye, well, the trust and Stratford could not have had notice of the liquidating agent at the time the claim arose. They didn't even exist by the original claims bar date. Tina's Eye was not a creditor on the books at the time of liquidation. She became a creditor much later. And at that point in time, when she asserted a claim, and we became aware of the name and address, which the statute requires, of a particular creditor, we provided notice to give them the opportunity to be heard on their claim. Where does it say that in here? It says that you missed the deadline. All it says is please submit the properly completed proof of claim form with supporting documentation on or before January 24th. Right? But what would require a claim that arises after the entire process? I think the fourth paragraph in the letter envisions some of the statutory language. It says if you, to consider a claim filed after the waiver date, you must prove to the liquidating agent satisfaction that you did not have knowledge of the appointment of the liquidating agent. Right, we just went over that. Yeah, and I think that's... It's an and, but it's an and, and she did have knowledge of the liquidating agent. But she didn't have knowledge of a claim. She did not have a claim at that period in time. But that's not what it says. It says agents may consider claims filed after the claim's waiver date if they didn't receive notice of the liquidating agent in time to file a claim. But she had notice. But the claim, though... I'm sorry, and it says, and two, the claim is filed in time to permit payment of the claim. And then in the paragraph before that, it says the claim's waiver date is August 8, 2010. Correct. And what I believe the statute envisioned is, and then no matter when the claim arose, the liquidating agent still has certain functions it has to perform to minimize the loss to the shared insurance fund. And one of those is claims processing. That's the most important aspect. Managing expenses, paying claims. I don't know how the liquidating agent would have resolved this claim that arose five years after the claim's waiver date or five years after. But I know at the time of liquidation and at the time of the original claim's waiver date, these claims did not exist. The plaintiffs did not exist. We didn't have the names, addresses of these plaintiffs and the claimants to even give them notice of the claims process. And Tina's eye herself. But I don't understand which way that cuts. So why can't they just raise their claim now and go to court like any other case then? I mean, it seems like this is just completely outside of the process. I think it's actually part of the process. And I say that in terms of the liquidating agent is supposed to work efficiently and resolve all claims, to minimize the expenses of the liquidating agent estate in order to minimize the loss of the share insurance fund. And they could have, if given the opportunity in the statutorily mandated claims process, done so. How could they address this claim that basically arose ten years later? Well, they could have reviewed the claim submission, whatever they submitted, including how they didn't have notice of the appointment of the liquidating agent in order to file a claim in a timely manner. They had that opportunity. I'm just confused. I thought the claim basically arose ten years later. The claim, as I understand it, arose in 2023 when they filed a complaint based upon an alleged breach of an agreement based upon an act or omission of the liquidating agent at some point. Again, I would analogize to bankruptcy. I know it's not perfectly clear, but the idea is there's pot of money and there's claimants and you want everyone to get their claims in on time so the assets can be handed out or recouped in a timely way. And then there's bankruptcy plan, there's confirmation. Here there's, I don't know, liquidation, and I forget the exact magic words. And you want it to all be done, and that's how it works. But at the same time, the statute also requires jurisdiction if there's based upon under 13D, 1787B13D, an act or omission of the liquidating agent. There's no time limitation on when that occurs. It could occur three years later after the claims process. Well, it seems to be set up to tie to the period of time when you're finishing the plan and doing the liquidation, and all those claims have to be resolved in sort of one process at one time. Based upon my review, we have FDIC cane out of the First Circuit that understands there are late filing claims and that exhaustion of administrative remedies is still required. What happens so they exhaust the plans, the agency says we're not going to pay you, then what happens? They have multiple opportunities. They could appeal to the board, and then that would be a final agency action that they could then take an APA challenge. They could file a lawsuit, as they did here, and continue with the case. But the First Circuit was deferring to the FDIC under Chevron, and even the First Circuit expressed some doubts and then deferred because of Chevron. That no longer exists. I do agree that Chevron was recently overturned. But in this particular case, we have also White Kitchen Square. We have Kelly versus FDIC. Each of those had statutory jurisdiction provisions in them. And I would also submit that this is a very slippery slope too because the liquidating agent assumes a lot of contracts as part of liquidations. And if those contracts have jurisdiction provisions or even state law, state venue provisions in them, would that also constitute a potential waiver of 1789A or the claims process? I think the claims process is in there for a very important reason to allow, as you're under-indicated, the importance of wrapping things up allows the liquidating agent. Once the claims process is wrapped up, that's the point. Once it's over, are you immune from suit in essence? Well, the claims process, certainly the liquidation of state is not over in this case. As I mentioned, we collected the settlement amount of $22 million, but as of 2020 there was a motion for restitution being deemed satisfied in the criminal proceedings against Mr. Zai that they withdrew. And at that time, we were still owed $1.4 million from the conduct of Mr. Zai and his wife. The plan or whatever you want to call it is still open to collect assets over time. Has it been paying out assets in the last number of years? I mean, has it been paying out claims in the last few years? Or weren't those all resolved previously like 10 years ago? I don't know the answer to that right now, Your Honor. You keep making the point that the plan is still open or it's not final. Correct. Because there's money coming in, but you have no evidence of money going out. Like all the claims, unless someone said they didn't have notice and filed something, all those claims are done. Is there evidence of claims being paid in the last 15 years? Your Honor, yes. I'm engaged by the liquidating agent, and they are paying my invoices for services rendered, which is an outgoing expense. Oh, you're not a claimant. It would be a claim if they did not pay me potentially. Okay, other than their lawyers, which I'm very happy to hear they're paying. Is there anyone else that they're paying? And you're doing great. They're well-earned money. But is there anyone else that they're paying? Your Honor, I do not know that. I know they are party to numerous agreements. I know there's many lawsuits that are settled and resolved. I don't know if there are any payments. And I do believe once they get a final number and if there's any money left over, there might be additional distributions back to the share insurance fund, or there could be stuff to the shares. But I just know that the state's open, which means all the processes. Are these lawsuits that are, well, I guess, are they lawsuits that totally all the facts arose after the, I'll say, confirmation of the plan? That's not the right term, but after the sort of close of the liquidation? Yeah. Unfortunately, a lot of these lawsuits extended for long periods of time, and they're subject to ongoing agreements. Are they sort of traced back to the events pre-liquidation or during the liquidation? They could, or they could post when you determine assets exist that have been fraudulently transferred, as long as there's no statute of limitations that expired. I mean, we have, under the Federal Credit Union Act, extended statutes of limitations for a period of six years. When we uncover information that we couldn't get from an original creditor, then we could pursue that individual later on. So I would say that the only statutory specified exemption from the strict requirements of the claims process is that they did not receive notice of the appointment of the receiver. And even in that case, the liquidating agent may consider it a late-file claim. That's Sechress v. IndyMac out of the Eastern District of Michigan in 2009. And that's exactly this case. They very much learned of a claim. They were not a creditor at the time of liquidation. They learned of a claim later. They were provided the opportunity to file that claim. In certain circumstances, some of the plaintiffs had no notice of the liquidating agent. They would have met every element of that statute. They just simply chose to proceed to a lawsuit. And what we did was ask the court to assert the jurisdictional provision requirement requiring exhaustion, which has been upheld by the Sixth Circuit multiple times, in Perna Health, Dernis Village of Oakwood v. State & Trust Company. And as the district court here said, a retention of jurisdiction cannot operate to bypass a process mandated by Congress. And Zai has not provided any authority that would allow for such result. Thank you, Your Honors, if there's no further questions.  Can I ask you, what about the estate that didn't have notice of the liquidating agent? I'm sorry, Your Honor? Right, because Ms. Zai represents not only herself, but she represents the children, correct? Yes, and, Your Honor, they're just wrong. The contract references the trust. Tina Zai signed the assignment that's incorporated into the contract, into the settlement agreement. She signed it individually and as trustee of her children's trust. So they've known who these defendants are for a long time. I'm sorry to interrupt you. Is the settlement agreement in the record? Yes, Your Honor. What is it? Just so you can give me the site, that's good enough. Your Honor, it's 7-2. Okay, thank you. Yeah, I see it now. Just one last point, Your Honor. Other than the fact that the letter gives an erroneous notice, they admit that the claims process has run, but this is a continuation of a lawsuit that the NCUA brought. So that's why we get into our ancillary jurisdiction argument. But the problem here is, what constitutes a claim? I'm sorry, I'm going back to this now. I'm looking at it, and it just says Tina Zai. It doesn't say she's signing it on behalf. It references an assignment. The assignment is incorporated and attached to the agreement. You'd have to flip to the exhibit where the assignment is. It's assignment to a nominal party. And in that assignment, there's a signature from Tina Zai individually and on behalf of her children's trusts. And then also within the settlement agreement itself, it references the trust. Okay, great. Thank you. Go ahead, I'm sorry. Just one last thing, Your Honor. The NCUA, they're not even following their own regulations. 12 CFR 709.1D states that claim means a creditor's claim against the credit union. That's not the situation here. This is a claim that has been asserted against a party to a contract, a settlement agreement. This court has jurisdiction, or excuse me, the trial court has jurisdiction to consider that, both by its own dismissal order and by the terms of the contract. That's really our case. With respect to due process, if this court affirms the trial court, Tina Zai, and the trust, they will not have due process of law because they'll have no remedy, and they would have had no remedy if they had complied with the notice, the discovered credit letters to begin with. Thank you, Your Honor. Thank you, counsel. Thank you both for your thoughtful arguments and briefing. The case will be submitted.